**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| RODNEY PINKETT,<br><br>      Plaintiff,<br><br>      v.<br><br>FIRST CITIZENS BANK and NORWEST CAPITAL INVESTMENT, INC.<br><br>      Defendants. | Case No. 09 CV 2365<br><br>Judge Hibbler<br><br>Magistrate Judge Nolan |

## DEFENDANT NORWEST'S AMENDED MEMORANDUM OF LAW IN SUPPORT OF ITS RULE 12(b)(6) MOTION TO DISMISS

### Introduction

Plaintiff Rodney Pinkett has failed to state a claim against Norwest Capital Investment, Inc. ("Norwest") in Counts I or II of his complaint[1], and pursuant to Fed. R. 12(b)(6), those counts should be dismissed by the Court. Count I fails because the exhibits to Pinkett's own complaint contradict and trump his claim that Norwest failed to comply with the Truth In Lending Act. The Norwest Loan Agreement clearly and accurately sets forth the amount financed, the finance charge, the annual percentage rate, and other applicable fees. Moreover, the exhibits demonstrate that Norwest had no security interest in Pinkett's property that would require disclosure under the Truth In Lending Act. Count II fails because, again, the exhibits to plaintiffs' complaint demonstrate that Norwest did not condition the extension of credit on the borrower's agreement to preauthorized electronic funds transfers. Therefore, a plain reading of the exhibits to Plaintiff's complaint mandates dismissal of Counts I and II.

---

[1] Norwest concurrently files its Answer and Affirmative Defenses to Counts III and IV, denying liability for those claims, in addition to the instant motion to dismiss.

**Background**

Rodney Pinkett is an employee of the United States Post Office ("USPS"). The USPS offers to its employees a means of paying for benefits, uniform costs and other expenses through an electronic allotment debiting system called "PostalEase." USPS employees like Pinkett are permitted to electronically manage the PostalEase deductions from their payroll checks. Norwest offers a short term loan program that allows USPS employees to utilize the allotment system in place to repay the loan over a period of time. The use of the PostalEase allotment system requires less paper work and simplifies the loan process for Norwest and for the USPS employees. Each applicant is provided a seven page application that provides the information Norwest is required to disclose under the Truth In Lending Act ("TILA"). Although borrowers are permitted to repay the loan through the PostalEase allotment system, Norwest permits them to repay the loan through alternative means as well.

**Argument**

**1.      The Allegations In Pinkett's TILA Claim Are Contradicted By Pinkett's Exhibits.**

In his complaint, Pinkett alleges that Norwest's Loan Agreement and Promissory Note [Complaint, Ex. A] fails to comply with the TILA in the following respects: (a) The payment schedule discloses 23 payments of $130.97, which exceeds the $2879.22 disclosed as the total of payments; (b) The amount financed is $1970, not $2000; (c) the $1 fee for routing the payments through FCB is a finance charge, not disclosed as such, and should be disclosed in the payment schedule disclosure; (d) The finance charge exceeds $879.22 by at least $52; (e) the annual percentage rate is incorrect by an amount exceeding the acceptable tolerance; (f) Norwest's documents fail to disclose that a security for the loan has been taken in the form of a credit card authorization, the First Citizen's account, the payroll allotment, and the electronic funds transfer for

2

the allotment. Norwest denies each and every one of these allegations, and a simple examination of the loan documents Pinkett attached to his complaint demonstrates that Pinkett's allegations that Norwest violated the TILA are false.

      **a.    Norwest's Loan Agreement Comports With The Requirements Of The TILA.**

Pinkett claims that Norwest's Consumer Loan Agreement and Promissory Note violates the TILA because it identifies 22 payments under the schedule of payments but discloses 23 payments. [Complaint, ¶ 19]. Even taking the allegations Pinkett plead as true, the Court is permitted and required to take notice of exhibits attached to the complaint that contradict the plaintiff's allegations. It is a "well-settled rule that when a written instrument contradicts allegations in a complaint to which it is attached, the exhibit trumps the allegations." *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 754 (7th Cir. 2002) (emphasis in original) (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 454 (7th Cir. 19998). *See also In the Matter of Wade*, 969 F.2d 241, 249 (7th Cir. 1992) ("A plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment."); *Graue Mill Dev. Corp. v. Colonial Bank & Trust Co. of Chicago*, 927 F.2d 988, 991 (7th Cir. 1991) (noting "where the allegations of a pleading are inconsistent with the terms of a written contract attached as an exhibit, the terms of the latter, fairly construed, must prevail over the averments differing therefrom.") (citations omitted)).

Norwest's Consumer Loan Agreement clearly and unambiguously sets forth that the loan would be repaid in 22 bi-weekly payments. [Complaint, Ex. A]. Pinkett apparently has counted the number of potential pay periods from September 5, 2008 and July 3, 2009 and determined there are 23. That fact alone does not give rise to a TILA claim, particularly where, as here, the agreement very clearly sets forth that the Norwest loan would be repaid in 22 payments.

3

### b. Norwest's Loan Agreement Properly Sets Forth The Finance Charge.

Pinkett's next several allegations are tied to his claim that Norwest failed to properly disclose items as "finance charges." Specifically, Pinkett claims that the $30 wire transfer fee and the $1 bi-weekly payment routing fee were not disclosed as part of the "finance charge." As a result, Pinkett claims that the fnance charge is misstated and exceeds the amount listed on the Loan Agreement. the TILA and Federal Reserve Board Regulation Z generally define a "finance charge" as those charges payable, directly or indirectly, by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit. 15 U.S.C. § 1605(a); 12 C.F.R. § 226.4(a). The TILA requires a creditor to disclose for each consumer credit transaction, among other things, the amount financed, the finance charge, the annual percentage rate, and the total amount of payments for repayment of the loan. *Id.*

Once again, Pinkett's own Exhibit A, the Loan Agreement and Promissory Note, contradicts Pinkett's allegations and shows that Norwest has complied with the requirements of the TILA and Regulation Z. The Agreement plainly identifies the $30 wire transfer fee on the list of charges. In fact, the fee is broken out separately and circled in dark black. [Complaint, Ex. A]. Norwest properly identified the amount financed as $2000, and then shows that the $30 was the "Administrative & Transfer Fee deducted from the Amt. Financed for the wire transfer of funds." [Complaint, Ex. A]. Under its terms, the TILA provides that a creditor should include in the amount financed, any amounts paid to a third party on the consumer's behalf. 15 U.S.C. § 1638(a). If Norwest had listed the $30 fee as part of the Finance Charge, as Pinkett suggests, it would have constituted a double charge and potentially confused the consumer. Similarly, the $30 fee is not part of the annual percentage rate because it was deducted from the amount financed and properly disclosed as such on the Loan Agreement. [Complaint, Ex. A].

Pinkett also claims that the $1 bi-weekly amount charged by First Citizens for the allotment should have been included as part of the finance charge and included as part of the annual percentage rate. Once again, the exhibits attached to Pinkett's complaint contradict and trump the allegations in the complaint. In the complaint, Pinkett claims that the $1 fee was a charge he was required to pay as a condition of obtaining credit. However, Exhibit F to the Complaint clearly shows that the $1 fee was billed by First Citizens for the bi-weekly allotment that Pinkett opted to use as his method of repayment. As shown on the second page of Exhibit K, the consumer is not required to pay via allotments. Exhibit K specifically identifies at least one other means of repayment - the consumer has the option of paying via credit card. [Complaint, Ex. K, p. 2]. Given that the consumer is not required to pay by allotments, it would be improper to include the $1 bi-weekly charge as part of the finance charge because it is far from certain that the consumer will be subject to the charge. Neither the Loan Agreement, the Postal Allotment Sign Up form, nor any of the other exhibits filed with the complaint demonstrate that the allotment fee should properly be considered a charge the consumer was required to pay to obtain the loan. As such, including the fee as part of the finance charge and/or the annual percentage rate would have been potentially misleading.

    c. **Norwest Properly Stated The Annual Percentage Rate.**

Pinkett alleges in the complaint that the APR set forth in the Loan Agreement and Promissory Note was incorrect as it failed to include the $30 wire transfer fee and the $1 allotment fees. For the reasons set forth above, the APR was properly calculated. Norwest loaned Pinkett $2000, and as Norwest disclosed on the Loan Agreement, deducted $30 to wire the funds to Pinkett's checking account. Mr. Pinkett agreed to pay back the money in 22 bi-weekly payments of $130.87, for a total repayment of $2879.22, which constitutes an Annual Percentage Rate of 89%, as was set forth on the face of the Loan Agreement. [Complaint, Ex. A].

### d. **Norwest Did Not Obtain A Security Interest In Pinkett's Allotments, Credit Card Or Bank Account.**

Pinkett alleges in Count I that Norwest violated the TILA by failing to disclose that it had obtained a security interest in Pinkett's Allotments, Credit Card, and FCB bank account. [Complaint ¶ 19g.]. The Federal Reserve Board promulgated §226.18 as part of Regulation Z, which implements the TILA. Section 226.18(m) provides that creditors governed by the TILA shall disclose "[t]he fact that the creditor has or will acquire a security interest in the property purchased as part of the transaction, or in other property identified by item or type." 12 C.F.R. §226.18. Under Regulation Z, a security interest is "an interest in property that secures performance of a consumer credit obligation and that is recognized by state or federal law." §226.2(a)(25). The complaint asserts the conclusion that "Exhibit A fails to disclose that security has been taken for the loan, in the form of (a) a debt authorization against an existing credit or debit account, (b) the FCB account, (c) the payroll allotment used to transfer funds to the FCB account, and (d) the electronic funds transfer authorization used to transfer payroll deductions from the FCB account to NCI. [Complaint ¶ 19g].

The complaint fails to allege that Norwest has or will acquire an interest in the debtor's property. Rather, the account authorizations provided to Norwest simply "served to facilitate repayment of the loans, not to secure repayment upon default." *Cobb v. Monarch Finance Corp., et al.*, 913 F. Supp. 1164, 1178 (N.D. Ill. 1995)(rejecting putative class members' claim that establishment of accounts for allotments of postal workers constituted a security interest under the TILA). Norwest never obtained an interest in Plaintiff's property, only authorization to seek repayment of the loan. Therefore, Norwest could not have violated the TILA.

### 2. **Norwest Did Not Violate The EFTA Because Credit Was Not Conditioned On Repayment by Electronic Funds Transfer.**

Pinkett alleges that Norwest violated 15 U.S.C. §1693k and 12 C.F.R. §205.10(e) by

"conditioning the extension of credit to plaintiff and other consumers on repayment by means of electronic funds transfers." [Complaint, ¶¶ 35-39]. Pinkett specifically cites to Exhibits K and L from Norwest's website as the basis for his claim that credit is conditioned upon repayment by allotments. [Complaint, ¶36]. However, Pinkett fails to note that on the second page of Exhibit K, Norwest also explains to consumers that "we also accept credit card payments." [Complaint, Ex. K]. Similarly, Exhibit L provides as follows in the Frequently Asked Questions, "Do you accept any other type of payments? If you need help setting up payment arrangements, please contact one of our customer service representatives at 1-800-818-1908." [Complaint, Ex. L]. Once again, Pinkett's own exhibits to his complaint trump his allegations. *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 754 (7th Cir. 2002). For these reasons, Plaintiff has failed to state a claim under Count II.

## Conclusion

For the foregoing reasons, Defendant Norwest Capital Investments, Inc. respectfully requests that the Court dismiss Counts I and II of the complaint.

*Respectfully submitted,*

By: s/ Christopher T. Sheean
Christopher T. Sheean, ARDC #6210018
Joseph P. Kincaid, ARDC # 6202639
Swanson, Martin & Bell LLP
330 North Wabash Avenue, Suite 3300
Chicago, Illinois 60611
(312) 321-9100
Fax (312) 321-0990
Counsel for Defendant Norwest Capital Investment, Inc.