**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RODNEY PINKETT, | ) | |
| on behalf of himself and the classes defined herein, | ) | |
| | ) | |
| Plaintiff, | ) | 09-cv-2365 |
| | ) | |
| v. | ) | Judge Hibbler |
| | ) | |
| FIRST CITIZENS BANK and | ) | Magistrate Judge Nolan |
| NORWEST CAPITAL INVESTMENT, INC.; | ) | |
| | ) | |
| Defendants. | ) | |

**AMENDED COMPLAINT – CLASS ACTION**

**MATTERS COMMON TO MULTIPLE CLAIMS**

**INTRODUCTION**

1. Rodney Pinkett brings this action to secure redress from unlawful credit and collection practices engaged in by Norwest Capital Investments, Inc. ("NCI") and First Citizens Bank ("FCB") in connection with high-interest loans made to postal workers. Rodney Pinkett alleges violation of (1) the Truth in Lending Act, 15 U.S.C. §1601 *et seq.* ("TILA"), and Federal Reserve Board Regulation Z, 12 C.F.R. part 226, (2) the Electronic Funds Transfer Act, 15 U.S.C. §1693 et seq. ("EFTA") and Federal Reserve Board Regulation E, 12 C.F.R. part 205, and (3) Illinois law.

**JURISDICTION AND VENUE**

2. This Court has jurisdiction under 15 U.S.C. §§1640 (TILA) and 1693m (EFTA) and 28 U.S.C. §§1331, 1337 and 1367. Venue in this district is proper because the events at issue occurred here.

1

## PARTIES

3. Rodney Pinkett is an individual who resides in the Northern District of Illinois. He is an employee of the United States Postal Service.

4. NCI is a corporation purportedly chartered in the Bahamas. It maintains an office at 21485 E. Dixie Highway, Aventura, FL 33180. However, in order to avoid disclosure of a street address to debtors, it directs correspondence to P.O Box 1207, Hallandale, FL 33008.

5. FCB is a bank with its principal office at 425 West Dixie Avenue, Elizabethtown, KY 42701.

6. NCI is engaged in the consumer loan business.

7. NCI is not now and has never been licensed under any Illinois banking or lending statute or chartered as a bank.

8. NCI makes more than 26 extensions of consumer credit per year and is a "creditor" as defined in TILA and Regulation Z.

## FACTS

9. On or about August 25, 2008, Rodney Pinkett obtained a loan from NCI for personal, family or household purposes.

10. The loan documentation included:

    a. A combination loan agreement / Truth in Lending disclosure statement (Exhibit A);

    b. An "electronic funds transfer and authorization agreement for pre-arranged payments" (Exhibit B);

      c.      The document attached as <u>Exhibit C</u>, authorizing debits against an account accessed through a Visa debit card;

      d.      The application attached as <u>Exhibit D</u>;

      e.      The "credit release authorization and supplemental loan application information" attached as <u>Exhibit E</u>;

      f.      The "postal allotment sign up form" attached as <u>Exhibit F</u>;

      g.      The "NCI PostalEase Authorization" attached as <u>Exhibit G</u>.

      h.      The document attached as <u>Exhibit H</u>.

11.    <u>Exhibit F</u> authorized the creation of an account at FCB at which deductions or allotments from plaintiff's USPS paycheck would be deposited.

12.    Plaintiff authorized FCB to deduct from the account amounts to repay the loan and transfer these on a periodic basis to NCI.

13.    Plaintiff had no prior relations with FCB and had no reason to open an account with a bank in FCB's location, in a town of approximately 24,000 residents in rural Kentucky. Plaintiff's entire dealings with FCB were a condition of the loan documented in <u>Exhibits A-H</u>.

14.    On information and belief, the several hundred members of the class likewise have no prior relations with FCB and their dealings with FCB were a condition of their loans.

15.    NCI regularly targets postal employees and federal workers with poor credit for short-term, high-interest loans by placing advertisements in the form of <u>Exhibit I</u> in postal facilities. The advertisement also offers credit repair services through an affiliated

company identified as "Costal Credit Clinic." Id.

16. 31 C.F.R. 103.121(b), the Customer Identification Program, requires financial institutions such as FCB, at a minimum, to obtain a customer's name, date of birth, and address before opening an account.

17. FCB knew, or should have known, that it was opening accounts for hundreds of Chicago-area postal employees that would have no reason to do business with FCB other than to facilitate repayment of the NCI loans.

18. Exhibit F provides for a fee of $1 per payment.

19. This fee is a cost of obtaining the loan.

20. Exhibit F, which FCB obtained, contains enough information on its face for FCB to determine that the loan for which it was collecting $1 per payment had an interest rate in excess of that permitted by Illinois law.

21. The $1 fee was in fact charged to plaintiff and others and was deducted from plaintiff's USPS paycheck and retained by FCB.

22. Exhibits A-H are standard printed forms used in hundreds of high-interest loan transactions.

23. The TILA disclosures in Exhibit A are filled out in a standardized manner.

24. Exhibit A fails to comply with the Truth in Lending Act, 15 U.S.C. §1338, and Regulation Z, 12 C.F.R. §226.18, in the following respects:

    a. The payment schedule discloses 23 payments of $130.87 each, the total of which exceeds the $2879.22 disclosed as the total of payments.

      b.      The amount financed is $1,970, not $2,000, in that the fee for disbursing the funds is a finance charge.

      c.      In addition, the $1 fee for routing the payments through FCB is a finance charge, not disclosed as such.

      d.      The $1 fee should be included in the payment schedule disclosure; i.e., each payment should be $131.87, not $130.87.

      e.      The finance charge exceeds $879.22 by at least $52, an amount exceeding the applicable tolerance;

      f.      The annual percentage rate ("APR") is incorrect by an amount exceeding the applicable tolerance. On information and belief, the true APR, treating the $30 "administrative and transfer fee" and the $1 per payment remittance fee as finance charges, exceeds 97%, as set forth in Exhibit J.

      g.      Exhibit A fails to disclose that security has been taken for the loan, in the form of (a) a debit authorization against an existing credit or debit account, (b) the FCB account, (c) the payroll allotment used to transfer funds to the FCB account, and (d) the electronic funds transfer authorization used to transfer payroll deductions from the FCB account to NCI.

25.     On information and belief, NCI regularly fills out its disclosures in the same manner as with Rodney Pinkett's transaction.

26.     The combined effect of Exhibits A-I is to require plaintiff, as a condition

5

of obtaining the loan, to repay it by means of preauthorized electronic fund transfers.

## COUNT I – TRUTH IN LENDING ACT

27. Rodney Pinkett incorporates paragraphs 1-21.

28. This claim is against NCI.

29. NCI violated the Truth in Lending Act, 15 U.S.C. §1638, and Federal Reserve Board Regulation Z, 12 C.F.R. §226.18.

## CLASS ALLEGATIONS

30. Rodney Pinkett brings this claim on behalf of a class.

31. The class consists of (a) all individuals (b) who entered into loans with NCI (c) on or after a date one year prior to the filing of this action and on or before a date 20 days after the filing of this action (d) whose Truth in Lending statements are prepared using the same printed form as in Exhibit A.

32. The class is so numerous that joinder of all members is not practicable.

33. On information and belief, there are more than 40 individuals who entered into loans with NCI on or after a date one year prior to the filing of this action and on or before a date 20 days after the filing of this action, whose Truth in Lending statements were prepared using the same printed form as Exhibit A. A list of lawsuits filed by defendant to enforce such loan agreements is attached as Exhibit K. Some NCI customers, such as plaintiff, have not been sued.

34. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The

predominant common questions are:

    a.    Whether NCI's TILA disclosures are standardized, and

    b.    Whether the disclosures conform to the requirements of TILA and Regulation Z.

35. Rodney Pinkett's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

36. Rodney Pinkett will fairly and adequately represent the class members. Rodney Pinkett has retained counsel experienced in class action and consumer credit litigation.

37. A class claim is appropriate for the fair and efficient adjudication of this matter, in that:

    a.    Individual actions are not economically feasible; and

    b.    Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Rodney Pinkett and the class members and against NCI for:

    (1)    Statutory damages;

    (2)    Attorney's fees, litigation expenses and costs of suit; and

    (3)    Such other and further relief as the Court deems proper.

## COUNT II – ELECTRONIC FUNDS TRANSFER ACT

38. Rodney Pinkett incorporates paragraphs 1-21.

39. This claim is against NCI and FCB .

40. NCI and FCB, acting in concert, conditioned the extension of credit to plaintiff and other consumers on repayment by means of electronic fund transfers.

41. NCI's web site expressly states that "On your payment due dates, we will receive the amount that is owed to us via allotments" (Exhibit L) and "Each payment per pay period will be deducted via an allotment." (Exhibit M). On information and belief, this information is provided to all NCI customers. The "allotments" go into the FCB account, which are the subject of electronic funds transfers in the manner set forth above.

42. Such requirement of repayment via electronic funds transfers violated 15 U.S.C. §1693k and 12 C.F.R. §205.10(e).

43. Section 1692k provides:

**§ 1693k. Compulsory use of electronic fund transfers**

**No person may– . (1) condition the extension of credit to a consumer on such consumer's repayment by means of preauthorized electronic fund transfers; . . .**

44. Section 205.10(e) provides:

**(e) Compulsory use -- (1) Credit. No financial institution or other person may condition an extension of credit to a consumer on the consumer's repayment by preauthorized electronic fund transfers, except for credit extended under an overdraft credit plan or extended to maintain a specified minimum balance in the consumer's account.**

### CLASS ALLEGATIONS

45. Rodney Pinkett brings this claim on behalf of a class.

46. The class consists of (a) all individuals (b) who entered into loans with NCI (c) on or after a date one year prior to the filing of this action and on or before a date 20 days after the filing of this action (d) who had an account opened at FCB in connection with such loan.

47. The class is so numerous that joinder of all members is not practicable.

8

48.  On information and belief, there are more than 40 individuals who entered into loans with NCI on or after a date one year prior to the filing of this action and on or before a date 20 days after the filing of this action, who had an account opened at FCB in connection with such loan.

49.  There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

    a.  Whether defendants conditioned the extension of credit on its repayment through preauthorized electronic fund transfers;

    b.  Whether such practice violates the EFTA.

50.  Rodney Pinkett's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

51.  Rodney Pinkett will fairly and adequately represent the class members. Rodney Pinkett has retained counsel experienced in class action and consumer credit litigation.

52.  A class claim is appropriate for the fair and efficient adjudication of this matter, in that:

    a.  Individual actions are not economically feasible; and

    b.  Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Rodney Pinkett and the class members and against defendants for:

    (1)  Statutory damages;

    (2)  Actual damages equal to all fees charged in connection

9

                with the transfers or the maintenance of accounts at FCB.

      (3)      Attorney's fees, litigation expenses and costs of suit; and

      (4)      Such other and further relief as the Court deems proper.

## COUNT III – INTEREST ACT

53.    Rodney Pinkett incorporates paragraphs 1-21.

54.    This claim is against NCI.

55.    The Illinois Interest Act, 815 ILCS 205/4, provides:

  **Sec. 4. General interest rate. (1) Except as otherwise provided in Section 4.05 [815 ILCS 205/4.05], in all written contracts it shall be lawful for the parties to stipulate or agree that 9% per annum, or any less sum of interest, shall be taken and paid upon every $ 100 of money loaned or in any manner due and owing from any person to any other person or corporation in this state, and after that rate for a greater or less sum, or for a longer or shorter time, except as herein provided....**

56.    NCI contracted for, charged and collected interest in excess of 9%.

57.    All of NCI's loans are made at rates in excess of 9%.

## CLASS ALLEGATIONS

58.    Rodney Pinkett brings this claim on behalf of a class.

59.    The class consists of (a) all individuals (b) who entered into loans with NCI (c) that are either outstanding on NCI's books, or were paid within 2 years prior to the filing of this action.

60.    The class is so numerous that joinder of all members is not practicable.

61.    On information and belief, there are at least 40 individuals who entered into loans with NCI that are either outstanding on NCI's books, or were paid within 2 years prior to the filing of this action.

62. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common question is whether defendant's loans violate the Interest Act.

63. Rodney Pinkett's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

64. Rodney Pinkett will fairly and adequately represent the class members. Rodney Pinkett has retained counsel experienced in class litigation and consumer credit litigation.

65. A class action is appropriate for the fair and efficient adjudication of this matter, in that:

    a. Individual actions are not economically feasible; and

    b. Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Rodney Pinkett and the class members and against Norwest Capital Investments, Inc. for:

    (1) Statutory damages as provided in 815 ILCS 205/6a;

    (2) Attorney's fees, litigation expenses and costs of suit; and

    (3) Such other and further relief as the Court deems proper.

## COUNT IV – ILLINOIS CONSUMER FRAUD ACT

66. Rodney Pinkett incorporates paragraphs 1-21.

67. This claim is against both FCB and NCI.

68. Defendants, acting in concert, engaged in unfair and deceptive acts and practices, in violation of 815 ILCS 505/2, by:

a. Making loans at a rate more than 10 times the legally enforceable rate;

b. Understating the actual interest rate;

c. Requiring repayment of the loans through a convoluted series of transfers and accounts, involving an unlawful compulsory electronic funds transfer;

d. Including in their form documents other oppressive and illegal provisions, such as the statement in Exhibit A that "If you should ever file for Bankruptcy in the United States, this Bankruptcy would not apply to this loan," the statement in Exhibit E that NCI is authorized to "contact any individuals, all business, company, corporation, or credit bureau to assist in collecting payment in case my loan goes into default," the statement in Exhibit E that "past and present supervisors" may release information to help NCI collect the debt.

69. Defendant FCB knew, or should have known, from the information contained in Exhibit F that the loans made by NCI carried interest rates far in excess of that permitted by Illinois law.

70. Defendant FCB directly profited from facilitating repayment of the illegal loans made by NCI.

71. Defendants engaged in such conduct in the course of trade and commerce.

72. Defendants engaged in such conduct for the purpose of taking advantage

12

of and overreaching unsophisticated consumers.

**CLASS ALLEGATIONS**

73. Rodney Pinkett brings this claim on behalf of a class.

74. The class consists of (a) all individuals (b) who entered into loans with NCI (c) that are either outstanding on NCI's books, or were paid within 3 years prior to the filing of this action.

75. The class is so numerous that joinder of all members is not practicable.

76. On information and belief, there are at least 40 individuals who entered into loans with NCI that are either outstanding on NCI's books, or were paid within 3 years prior to the filing of this action.

77. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common question is whether defendants' practices are unfair or deceptive.

78. Rodney Pinkett's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

79. Rodney Pinkett will fairly and adequately represent the class members. Rodney Pinkett has retained counsel experienced in class litigation and consumer credit litigation.

80. A class action is appropriate for the fair and efficient adjudication of this matter, in that:

    a. Individual actions are not economically feasible; and

    b.  Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Rodney Pinkett and the class members and against defendants for:

  (1)  Compensatory damages;

  (2)  Punitive damages;

  (3)  Attorney's fees, litigation expenses and costs of suit;

  (4)  An injunction restraining defendants from conducting their unlawful lending scheme;

  (5)  Such other and further relief as the Court deems proper.

    <u>s/ Daniel A. Edelman</u>
    Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Zachary A. Jacobs
EDELMAN, COMBS, LATTURNER
  & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

### **NOTICE OF LIEN AND ASSIGNMENT**

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

s/ Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
     & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

T:\22813\Amended_.WPD