**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| RODNEY PINKETT, on behalf of himself and the classes defined herein, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>FIRST CITIZENS BANK and NORWEST CAPITAL INVESTMENT, INC. )<br>)<br>Defendants. ) | No. 09 CV 2365<br><br>Judge Hibbler<br>Magistrate Judge Nolan |

**DEFENDANT FIRST CITIZEN BANK'S
MEMORANDUM OF LAW IN SUPPORT OF ITS
<u>RULE 12(b)(6) MOTION TO DISMISS AMENDED COMPLAINT</u>**

**<u>INTRODUCTION</u>**

On April 17, 2009, Plaintiff filed a class-action Complaint asserting, among other things, a violation of the Electronic Funds Transfer Act ("EFTA"), specifically 15 U.S.C. § 1693k, against Norwest Capital Investment, Inc. ("Norwest") and First Citizens Bank ("First Citizens") (Count II). Plaintiff also asserts a claim for violation of the Illinois Consumer Fraud Act ("ICFA"), 815 ILCS 505/2, against Norwest and First Citizens, which is derivative of his EFTA claim (Count IV).[1] On September 8, 2009, Plaintiff filed an Amended Complaint, which includes the same EFTA and ICFA claims against First Citizens contained in Plaintiff's original Complaint. Plaintiff's original and amended factual averments underlying these causes of action against First Citizens, even if accepted as true, fall far short of stating claims against First Citizens under Fed.R.Civ.P. 8(a)(2).

---

[1] Plaintiff asserts other claims against Norwest – a Truth in Lending Act claim, 15 U.S.C. § 1638 and 12 C.F.R. § 226.18, and an Illinois Interest Act claim, 815 ILCS 205/4 – but the only claims asserted against First Citizens are the EFTA and ICFA claims.

15 U.S.C. § 1693k prohibits the conditioning of an extension of credit on repayment by preauthorized electronic transfers. Thus, in *Cobb v. Monarch Finance Corp.*, 1996 U.S. Dist. LEXIS 2814, *5 (N.D. Ill. March 8, 1996) (J. Aspen), attached hereto as Exhibit A, the Court determined that if the bank-defendant making the electronic transfers did not extend credit to the consumer, then the bank could not be held liable under 15 U.S.C. § 1693k. As in the case at bar, *Cobb* involved a plaintiff who authorized the use of an electronic allotment at one defendant (a bank) to repay a loan extended to him by a completely separate defendant (the lender). Based upon *Cobb*, and pursuant to the standards established in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), which were confirmed in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), Plaintiff fails to state either a plausible violation of the EFTA or a plausible ICFA claim against First Citizens.

The factual allegations in the Amended Complaint show that First Citizens never extended credit to Plaintiff, and therefore it cannot, as a matter of law, be liable under the EFTA or the ICFA. Furthermore, the Amended Complaint contains no facts supporting Plaintiff's bare conclusion that Norwest and First Citizens "acted in concert" in extending credit to Plaintiff. Based upon *Cobb*, and pursuant to the standards established in *Twombly* and *Ashcroft*, Plaintiff fails to state either a plausible violation of the EFTA or a plausible ICFA claim against First Citizens.

For these reasons, as more thoroughly discussed in the remainder of this memorandum, the Court should grant First Citizens' motion to dismiss under Fed.R.Civ.P. 12(b)(6) because Plaintiff fails to state any claim against First Citizens upon which relief can be granted.

## BACKGROUND

The pertinent factual allegations set forth in Plaintiff's Amended Complaint are as follows. For purposes of this motion only, these facts will be assumed true. On or about

August 25, 2008, Plaintiff, a United States Postal Service employee, obtained a loan from Norwest, a company engaged in the consumer loan business. [Amended Complaint, ¶¶ 3, 6, 9]. As part of this loan transaction, Norwest provided Plaintiff with eight standard printed forms. [Amended Complaint, ¶¶ 10, 22 & Exhibits A-H].[2] Plaintiff claims that Norwest's loan documentation required him, as a condition of obtaining his loan, to repay the loan by means of preauthorized electronic fund transfers. [Amended Complaint, ¶ 26].

First Citizens' one and only connection with the loan transaction between Plaintiff and Norwest is the postal allotment sign up form (attached to the Amended Complaint as Exhibit F) included by Norwest in the loan documentation. With Exhibit F, Plaintiff authorized the creation of an account at First Citizens to receive allotments from his paycheck, and further instructed First Citizens to transfer those funds from his account bi-weekly to Norwest in order to repay his loan.[3] [Amended Complaint, ¶¶ 11, 12 & Exhibit F]. In exchange for this service, First Citizens charged and retained a $1.00 fee per transfer, which Plaintiff claims to have been a cost of

---

[2] The forms Norwest provided to Plaintiff include: (1) a combination loan agreement / Truth in Lending disclosure statement (Exhibit A); (2) an electronic funds transfer and authorization agreement (Exhibit B); (3) an authorization of debits against an account accessed through a Visa debit card (Exhibit C); (4) the application (Exhibit D); (5) a credit release authorization and supplemental loan application information (Exhibit E); (6) a postal allotment sign up form (Exhibit F); (7) the NCI PostalEase Authorization (Exhibit G); and (8) a disclosure statement (Exhibit H).

[3] In his Amended Complaint, Plaintiff states that under 31 C.F.R. 103.121(b), First Citizens was required, at a minimum, to obtain a customer's name, date of birth, and address before opening an account. [Amended Complaint, ¶ 16]. Plaintiff fails to mention that First Citizens actually obtained this information, which could explain why Plaintiff did not assert an actual *violation* of 31 C.F.R. 103.121(b) in his Amended Complaint. One need only review Exhibit F attached to the Amended Complaint to see that Plaintiff provided all of this information to First Citizens prior to the opening of his account. [Amended Complaint, Exhibit F]. More importantly, Plaintiff's allegation has no relevance to the question of whether Plaintiff has plead sufficient facts to assert a plausible EFTA or ICFA claim against First Citizens.

obtaining the loan from Norwest. [Amended Complaint, ¶¶ 18-21 & Exhibit F]. According to Plaintiff, First Citizens made a profit from the transfer fees. [Amended Complaint, ¶ 70].

In his Amended Complaint, Plaintiff alleges that his dealings with First Citizens were a condition of the loan with Norwest, as Plaintiff had no prior relations with First Citizens and no other reason to open an account at First Citizens. [Amended Complaint, ¶ 13]. Plaintiff further alleges that First Citizens either knew, or should have known, that it was opening accounts for hundreds of Chicago-area residents having no reason to do business with First Citizens other than to facilitate repayment of loans with Norwest. [Amended Complaint, ¶ 17]. Plaintiff also alleges that First Citizens either knew, or should have known, from the contents of Exhibit F that Plaintiff's loan with Norwest had an impermissible interest rate under Illinois law. [Amended Complaint, ¶ 20]. Conspicuously absent from Plaintiff's Amended Complaint, though, are any allegations that First Citizens extended credit to Plaintiff, that First Citizens was in any way involved in the decision to extend credit to Plaintiff, or that First Citizens had any dealings at all with Plaintiff until after Plaintiff signed the postal allotment sign-up form included in Norwest's loan documentation.

Despite the lack of involvement by First Citizens with respect to Plaintiff's loan from Norwest, Plaintiff contends that First Citizens violated the Electronic Fund Transfers Act, specifically 15 U.S.C. § 1693k and 12 C.F.R. § 205.10(e),[4] by conditioning the extension of credit on repayment by means of electronic fund transfers. [Amended Complaint, ¶¶ 39-44]. Plaintiff also asserts that First Citizens violated the Illinois Consumer Fraud Act, 815 ILCS

---

[4] 15 U.S.C. § 1693k provides, in relevant part, that "[n]o person may … condition the extension of credit to a consumer on such consumer's repayment by means of preauthorized electronic fund transfers." 12 C.F.R. § 205.10(e) provides, in relevant part, that "[n]o financial institution or other person may condition an extension of credit to a consumer on the consumer's repayment by preauthorized electronic fund transfers …"

4

505/2,[5] by: (1) making the loan at a rate more than 10 times the legally enforceable rate; (2) understating the actual interest rate for the loan; (3) requiring repayment of the loan by electronic funds transfers; and (4) including oppressive and illegal provisions in the form loan documents attached to the Complaint as Exhibits A and E. [Amended Complaint, ¶¶ 67-72].

In asserting these two claims against First Citizens, Plaintiff relies on the wholly unsupported conclusion in the Amended Complaint that Norwest and First Citizens Bank "acted in concert." [Amended Complaint, ¶¶ 40, 68]. Plaintiff's Amended Complaint, however, contains no factual allegations to support this conclusion. There are no factual allegations that Norwest and First Citizens jointly decided to make the loan to Plaintiff, that they acted together in making the loan to Plaintiff, or that they jointly demanded that Plaintiff sign the postal allotment sign-up form as a condition to the making of the loan. There are no factual allegations that First Citizens was in any way involved in the loan making process or that First Citizens made any representation to Plaintiff regarding his loan, other than the language contained in Exhibit F.

Plaintiff's allegation that First Citizens knew of an impermissible interest rate contained in Plaintiff's loan with Norwest shows that it was Norwest – not First Citizens – that extended credit to Plaintiff. [Amended Complaint, ¶¶ 20, 69]. Plaintiff's allegation that First Citizens made a profit from the $1.00 fee per transfer it charged to Plaintiff for facilitating repayment of Plaintiff's loan with Norwest likewise shows only that Norwest – not First Citizens – extended

---

[5] 815 ILCS 505/2 provides, in relevant part, that "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, …, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby."

credit to Plaintiff. [Amended Complaint, ¶¶ 11-12, 20-21, 70]. Neither allegation creates even an inference that First Citizens had any role or "acted in concert" with Norwest in extending credit to Plaintiff. Indeed, Plaintiff readily admits in his Amended Complaint that it was Norwest – not First Citizens – that made the loan and provided the loan documentation. [Amended Complaint, ¶¶ 9-10].

For purposes of a motion to dismiss, courts are required to accept all of the factual allegations in the complaint as true, but they "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted). *See also Ashcroft*, 129 S. Ct. at 1949 ("[T[he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). The allegations in the Amended Complaint, however, demonstrate nothing more than First Citizens acting in accordance with Plaintiff's specific authorization contained in Exhibit F. [Amended Complaint, ¶¶ 11-12]. Plaintiff's amended allegations fail to state a plausible claim against First Citizens for violation of the EFTA or the ICFA, and both claims should be dismissed.

## ARGUMENT

I. **Plaintiff Fails to State a Plausible Electronic Funds Transfer Act Claim Against First Citizens Under *Cobb* and *Twombly/Ashcroft*.**

The Supreme Court announced the standards a plaintiff must satisfy in order sufficiently to plead a claim under Rule 8(a)(2) in *Twombly*. The Supreme Court recently confirmed these standards in *Aschcroft*. In *Twombly*, the Supreme Court stated that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quotations & citations omitted). In other words, "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" do not suffice to plead a claim under Rule (a)(2). *Ashcroft*, 129 S. Ct. 1937, 1949 (citing *Twombly, 550 U.S. at 555)*.

For Plaintiff to state a claim under the EFTA for violation of 15 U.S.C. § 1693k against First Citizens, Plaintiff must do more than allege bare conclusions but, instead, must set forth factual allegations showing that his EFTA claim is "plausible" and not merely possible. *See Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. 1937, 1949 (citing *Twombly*, 550 U.S. at 556).

The Court need only review the Amended Complaint to see that Plaintiff fails to provide any grounds entitling him to relief against First Citizens under the EFTA. The plain language of both 15 U.S.C. § 1693k and 12 C.F.R. § 205.10(e), which Plaintiff recites in his Amended Complaint, requires a person to condition the extension of credit on repayment by electronic transfer for liability to attach. If a person never sought to extend credit to another, then 15 U.S.C. § 1693k and 12 C.F.R. § 205.10(e) are not applicable. *See Cobb*, 1996 U.S. Dist. LEXIS 2814 at *5, Exhibit A.

Thus, Plaintiff fails to allege the one fact essential to maintain his EFTA claim against First Citizens – that First Citizens extended credit to him conditioned on repayment by electronic transfer. According to Plaintiff's own Amended Complaint, First Citizens never sought to make

7

a loan or extend credit to Plaintiff. As Plaintiff alleges, "[o]n or about August 25, 2008, Rodney Pinkett *obtained a loan from NCI* for personal, family or household purposes." [Amended Complaint, ¶ 9 (emphasis added)]. Plaintiff nowhere alleges that First Citizens was involved in extending credit to Plaintiff, and therefore, First Citizens never conditioned the actual extension of credit to Plaintiff on repayment by electronic transfer. This Court has previously ruled – on a similar set of facts - that the absence of an extension of credit requires the dismissal of a 15 U.S.C. § 1693k claim. *See Cobb*, 1996 U.S. Dist. LEXIS 2814 at *5 (awarding summary judgment on an EFTA claim to a bank that was administering an electronic allotment and loan repayment because, among other reasons, the bank never extended credit to plaintiff and therefore did not condition credit on repayment by electronic transfer, as had been alleged by plaintiff in the complaint). Accordingly, under *Twombly/Ashcroft* and *Cobb*, Plaintiff fails to state an EFTA claim against First Citizens upon which relief can be granted.

Furthermore, Plaintiff's bare conclusion that Norwest and First Citizens "acted in concert" in conditioning the extension of credit on repayment by electronic transfer does not suffice to transform his otherwise deficient EFTA claim against First Citizens into a plausible one. A pleading must offer more than mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft*, 129 S. Ct. 1937, 1949 (citing *Twombly*, 550 U.S. at 555). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. *Id.* at 1950.

Plaintiff does here exactly what *Twombly* and *Ashcroft* condemn. In *Twombly*, the plaintiffs plead a conspiracy, but the Supreme Court held that such pleading was deficient. *Twombly*, 550 U.S. at 570. As the *Ashcroft* Court pointed out, if these conclusory allegations of conspiracy were credited, the plaintiffs' claim would have survived. But the claims did not

survive in *Twombly* because of the failure to provide any factual support, and they should not survive here.

Plaintiff fails to provide any factual allegations describing how Norwest and First Citizens acted together in extending credit to Plaintiff. There are no allegations that First Citizens was in any way involved in the decision to extend credit to Plaintiff. In fact, the allegations in the Amended Complaint demonstrate that it was solely Norwest – ***not First Citizens*** – that made the loan to Plaintiff. [Amended Complaint, ¶ 9]. Norwest – ***not First Citizens*** – provided the "postal allotment sign up form" (Exhibit F) to Plaintiff as part of Norwest's loan documentation. [Amended Complaint, ¶ 10]. First Citizens merely made the transfers set forth in Exhibit F as specifically authorized by Plaintiff and, according to Plaintiff, made a profit by receiving a $1.00 fee per transfer. [Amended Complaint, ¶¶ 11-12, 18, 20-21, 70].

While Plaintiff also alleges that First Citizens made similar transfers for numerous Chicago-area residents. [Amended Complaint, ¶ 17], even if true, the allegation does nothing to assert a "plausible" EFTA claim against First Citizens. Certainly, First Citizens is entitled to conduct its business and make a profit from its business – and that is all that Plaintiff's allegations suggest. Moreover, even assuming that First Citizens knew from Exhibit F that Plaintiff's loan with Norwest carried an impermissible interest rate -- even though Exhibit F does not identify the interest rate charged by Norwest -- Plaintiff fails to show how these allegations make his conclusion that First Citizens "acted in concert" with Norwest ***in making the loan*** to Plaintiff any more plausible. [Amended Complaint, ¶¶ 20, 69].

Even accepting the amended factual allegations as true, Plaintiff does nothing but show that First Citizens was identified on Exhibit F as a provider of allotment services and that First

9

Citizens subsequently acted in accordance with Plaintiff's instructions. First Citizens never extended credit to Plaintiff, but rather acted pursuant to Plaintiff's own allotment authorization. Extrapolating involvement by First Citizens in Norwest's extension of credit to Plaintiff solely from Exhibit F is the exact type of overly speculative guess-work that *Twombly/Ashcroft* expressly forbids. *See Twombly*, 550 U.S. at 556-57 ("Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."). Thus, Plaintiff's conclusion that Norwest and First Citizens "acted in concert" with absolutely no supporting factual allegations fails to state a "plausible" claim under the EFTA.

## II. First Citizens Cannot Be Held Liable Under the Illinois Consumer Fraud Act For Any Alleged Deceptive Acts It Did Not Itself Commit.

As described above, Plaintiff's claim against First Citizens under the ICFA is premised on Plaintiff's allegation that Norwest extended credit to him and required, *inter alia*, repayment of the loan by electronic funds transfers. [Amended Complaint, ¶¶ 68-72]. Plaintiff acknowledges, however, that Norwest, not First Citizens, provided Plaintiff with all the loan documentation, and that Norwest, not First Citizens, "extended credit" to Plaintiff. Thus, if any deception took place, it was not perpetrated by First Citizens. As such, assuming *arguendo* that a fraud took place, First Citizens was not the perpetrator of the fraud, and cannot be held liable for that fraud under the ICFA.

In *Zekman v. Direct American Marketers, Inc.*, 182 Ill. 2d 359, 695 N.E.2d 853 (1998), the Illinois Supreme Court expressly rejected the application of liability under the ICFA to a defendant who was not the "perpetrator of the fraud," even though the defendant received the benefit of the alleged fraud. *Id*. at 370. In *Zekman*, Direct American Marketers, Inc. ("Direct American") sent mailings to plaintiff Theodore Zekman ("Zekman") falsely indicating that

10

Zekman had won a large cash prize and urging him to call a "900" number to claim his prize. Each time Zekman called he incurred telephone charges of between $8 and $10, but won only discount coupons rather than a cash award. AT&T provided the billing service for Direct American, and retained a percentage of the charges for itself. Zekman brought a claim under the ICFA against AT&T, alleging that AT&T knowingly received the benefits of Direct American's deceptive mailings. The Illinois Supreme Court affirmed the dismissal of Zekman's ICFA claim, holding that knowingly receiving the benefits of another's fraud constitutes a form of "secondary liability" not provided for by the ICFA:

> '[T]he language of the [ICFA] shows that its reach was to be limited to conduct that defrauds or deceives consumers or others.' To allow plaintiff to recover for AT&T's knowingly receiving the benefits of Direct American's fraud would require us to read into the statute violations that are not a part of the statutory text.

182 Ill. 2d at 369, 695 N.E.2d at 859.

Several years later, in *Jackson v. South Holland Dodge*, 197 Ill. 2d 39, 755 N.E.2d 462 (2001), the Illinois Supreme Court reaffirmed this principle. In *Jackson*, the plaintiff, Vanessa Jackson ("Jackson"), brought an ICFA claim against an automotive finance company, Chrysler Financial Corporation ("Chrysler"), based on allegations that the auto dealer that sold Jackson her vehicle, South Holland Dodge, charged Jackson a fee of $1,099 for an extended service contract, but retained most of that charge itself rather than passing it on to Chrysler, the service contract provider. Jackson alleged that this conduct amounted to a misrepresentation and a violation of the ICFA for which Chrysler should be held liable because Chrysler provided the blank forms to South Holland Dodge, was purportedly aware of South Holland's practice of charging inflated fees for extended service contracts, and was later assigned Jackson's retail installment contract with South Holland.

11

The Illinois Supreme Court rejected Jackson's ICFA claim against Chrysler, holding that Chrysler could not be held liable under the ICFA because secondary liability is not permitted under the ICFA and there were no allegations that Chrysler had "directly participated in a scheme with the dealership to misrepresent facts to the plaintiff." *Jackson*, 197 Ill. 2d at 52, 755 N.E.2d at 471. The Court stated:

> Here, the closest the plaintiff came to alleging specific factual allegations to support its conclusory allegations was its claim that Chrysler supplies the blank forms that the dealerships later fill out with a misrepresentation as to the allocation of the extended warranty charge. **However, the blank forms themselves do not contain a misrepresentation, and there was nothing inherently deceptive about those forms**.

*Jackson*, 197 Ill. 2d at 52-53, 755 N.E.2d at 471 (emphasis added). This Court and many others in this district have applied the *Zekman*/*Jackson* rule to dismiss ICFA claims against defendants who are alleged to have received the benefits of an alleged fraud by another but not to have directly participated in it. *See*, *e.g.*, *Fleming–Dudley v. Legal Investigations, Inc.*, 2007 WL 952026 at *16 (N.D.Ill. March 22, 2007) (J. Filip) ("Substantial authority in this judicial district has held that derivative liability is not allowed under the Illinois Consumer Fraud Act;" gathering cases); *Crowe v. Joliet Dodge*, 2001 WL 811655 at *11 (N.D. Ill. July 18, 2001) (J. Hibbler) (under the ICFA, "the complaint fails to allege sufficient direct involvement by [the assignee of a financing contract]").[6]

The only factual allegations in Plaintiff's Amended Complaint regarding First Citizens concern the "postal allotment sign up form" (Exhibit F) signed by Plaintiff. Yet, Plaintiff alleges that Norwest, *not First Citizens*, provided the form to him as part of Norwest's packet of loan documentation. [Amended Complaint, ¶ 10]. Accordingly, if anything, Plaintiff's ICFA claim against First Citizens is even **more** attenuated than the claim rejected by *Jackson*, where

---

[6] Copies of the unpublished Westlaw cases are attached hereto as Group Exhibit B.

Chrysler itself provided the blank form but was still dismissed from liability under the ICFA. As was the case with Chrysler in *Jackson*, First Citizens did not engage in any of the allegedly deceptive conduct that occurred relating to the filling out of the loan forms.

Plaintiff alleges that First Citizens charged a $1.00 fee per transfer for facilitating the repayment of Plaintiff's loan with Norwest, that First Citizens made a profit for its service, and that First Citizens knew from Exhibit F that Norwest was charging Plaintiff an impermissible rate of interest on his loan. [Amended Complaint, ¶¶ 20, 69, 70]. If either the fees or interest rate were included deceptively or fraudulently, however, First Citizens was not the party that did so. Indeed, if Plaintiff truly believed that First Citizens was a "lender," Plaintiff would have included First Citizens in its Truth in Lending Act and Illinois Interest Act claims. As held by the Illinois Supreme Court in *Jackson*, where it was alleged that Chrysler knew of inflated fees, the ICFA does not provide for liability under these circumstances, even if it is assumed that First Citizens knew of an impermissible interest rate.[7] Plaintiff's ICFA claim against First Citizens premised upon alleged deception by Norwest cannot survive under *Zekman* and *Jackson*.

---

[7] Notwithstanding the fact that Exhibit F does not identify the interest rate anywhere on the form.

## **CONCLUSION**

For the foregoing reasons, Defendant First Citizens Bank respectfully requests the Court to dismiss Plaintiff's EFTA claim (Count II) and ICFA claim (Count IV) against First Citizens Bank with prejudice.

Dated: September 24, 2009	Respectfully submitted,

FIRST CITIZENS BANK


By /s/ Steven A. Levy
    One of Its Attorneys

Steven B. Loy
Anthony J. Phelps
Stoll Keenon Ogden PLLC
300 West Vine Street, Suite 2100
Lexington, KY 40507
(859) 231-3000

Steven A. Levy
Roger A. Lewis
GOLDBERG, KOHN, BELL, BLACK,
ROSENBLOOM & MORITZ, LTD.
55 East Monroe Street, Suite 3300
Chicago, IL 60603
(312) 201-4000

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that on September 24, 2009 he caused a copy of **Defendant First Citizens Bank's Memorandum of Law in Support of its Rule 12(b)(6) Motion to Dismiss Amended Complaint** be served by via the U.S. District Court's electronic notification system upon the following:

| | |
|---|---|
| Daniel A. Edelman | Joseph P. Kincaid |
| Cathleen M. Combs | Christopher T. Sheean |
| James O. Latturner | Swanson, Martin & Bell LLP |
| Zachary A. Jacobs | 330 N. Wabash Ave., Suite 3300 |
| Edelman, Combs, Latturner | Chicago, IL 60611 |
|   & Goodwin, LLC | |
| 120 S. LaSalle St., 18th Floor | |
| Chicago, IL 60603 | |

/s/Steven A. Levy